UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES VAN ALEXANDER,

    Plaintiff,

                                  CASE NO. 07-CV-11419-MOB-PJK
                                  JUDGE MARIANNE O. BATTANI
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

    v.

CITY OF PONTIAC, PONTIAC
POLICE DEPARTMENT,
VALARD GROSS, SGT. COSBY,
DARRIN D. MCALLISTER,
ALVIS, M. LOCRICCHIO,
J. MAROUGI, DANIEL MAIN and
JANCZAREK,

    Defendants.
_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS CITY OF PONTIAC, PONTIAC POLICE DEPARTMENT & CHIEF GROSS'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) (Doc. Ent. 21)

**I.**    **RECOMMENDATION:** The Court should grant defendants City of Pontiac, Pontiac Police Department and Chief Gross's Rule 12(b)(6) motion to dismiss. Doc. Ent. 21.

**II.**   **REPORT:**

**A.**   **Background**

Plaintiff alleges he sustained injury to his eye during his Saturday, November 11, 2006, arrest by the Pontiac Police Task Force. Doc. Ent. 1 at 5. According to the Pontiac Police Department's narrative report, Officers Locricchio, Marougi and Main apprehended plaintiff. Sergeant Cosby and Officer Alvis transported plaintiff to Pontiac Osteopathic Hospital (POH), and Sgt. Cosby searched plaintiff at POH. Officer Janczarek assisted with the search of the

vehicle in which plaintiff had been observed - a vehicle allegedly owned by Pontiac Police Detective Darrin McCallister. Doc. Ent. 21-3 at 1-2.

Plaintiff was admitted to POH that same day. The consultation report observes that plaintiff's left eye had an upper lid contusion, a corneal abrasion, a lower lid abrasion and a traumatic mydriasis.[1] Plaintiff was prescribed Ciloxan drops, erythromycin ointment and was given a Monday, November 13, 2006, follow-up appointment. Doc. Ent. 1 at 8-9.

On March 16, 2007, Chief of Police of the City of Pontiac, Valard Gross, wrote to plaintiff regarding his citizen complaint, concurring "with the finding that there was not a violation of the Rules and Regulations of the Pontiac Police Department regarding [plaintiff's] contact with the Pontiac Police Department on 11/11/06." Doc. Ent. 1 at 7.

On April 2, 2007, while incarcerated at the Oakland County Jail in Pontiac, Michigan, plaintiff filed a verified, pro se, in forma pauperis 42 U.S.C. § 1983 complaint against the City of Pontiac, the Pontiac Police Department, Gross, Cosby, Main, McAllister, Marougi, Janczarek, Locricchio and Alvis in their individual and official capacities. Doc. Ent. 1 at 1, 6, 11.[2] He claims that he did not pursue the prison grievance procedure, because the jail would not issue him the appropriate form on the basis that it was only for issues related to the county jail. Doc. Ent. 1 at 4. Plaintiff requests relief in the form of punitive and monetary damages "for the pain and suffering, as well as mental anguish for the treatment and los[s] of sight [in] his left eye[.]" Doc. Ent. 1 at 5.

---

[1] Mydriasis is "[d]ilatation of the pupil, especially excessive dilatation due to disease or the effect of a medicine, as atropine." SCHMIDT'S ATTORNEYS' DICTIONARY OF MEDICINE, VOLUME 3, M-309 (1995).

[2] On June 21, 2007, Magistrate Judge Whalen entered an order which in part waived prepayment of the filing fee. Doc. Ent. 7.

Judge Battani has referred this case to me to conduct pretrial proceedings. Doc. Ent. 10. On August 1, 2007, defendants filed an answer to the complaint. Doc. Ent. 23.[3]

**B.     The Instant Motion to Dismiss**

On July 31, 2007, defendants City of Pontiac, Pontiac Police Department and Gross filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). They argue that (I) plaintiff has failed to state a claim against the City of Pontiac and Gross and (II) the Pontiac Police Department may not be sued. Doc. Ent. 21 at 9-10. Therefore, these defendants request that the Court grant their motion and enter an order dismissing them with prejudice. Doc. Ent. 21 at 10.[4]

On August 8, 2007, I entered an order setting the response deadline to defendants' motion to dismiss for September 10, 2007. Doc. Ent. 27. To date, no such response has been filed.

**C.     Fed. R. Civ. P. 12 ("Defenses and Objections")**

Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections. As to how defenses and objections should be presented, the rule states in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]

Federal Rules of Civil Procedure 12(b)(6). "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters

---

[3]On August 1, 2007, a corrected index of exhibit was filed. Doc. Ent. 24.

[4]On July 31, 2007, an index of exhibits was filed. Doc. Ent. 22.

3

outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).[5]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1965 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true[.]" *Bell Atlantic Corp.*, 127 S. Ct. at 1965 (citations and quotations omitted). It is not enough that "the pleadings [leave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id*. at 1968. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1970. "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974. Claims should be "nudged . . . across the line from conceivable to plausible" to avoid dismissal. *Id.*

---

[5] Defendants City of Pontiac, Pontiac Police Department and Gross acknowledge that attachments to the complaint and the instant motion may cause the Court to convert the instant motion to one under Rule 56. However, given the nature of defendants' bases for dismissal, the Court should agree with these defendants that "this Court may fairly review [the attachments] without formal conversion to [Fed. R. Civ. P.] 56." Doc. Ent. 21 at 8.

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

**D.      Analysis**

**a.**      As an initial matter, it appears that the Court does not have plaintiff's current address. The only documents plaintiff has filed are his April 2, 2007, complaint (Doc. Ent. 1) and application to proceed without prepayment of fees (Doc. Ent. 2); his May 22, 2007, application to proceed without prepayment of fees (Doc. Ent. 4) and prisoner trust fund account statement (Doc. Ent. 5); and his June 8, 2007, prisoner trust fund account statement (Doc. Ent. 6). The address listed on plaintiff's latest (June 8, 2007) filing is P. O. Box 436017, C4A, Pontiac, Michigan 48343. This is the address for Oakland County Jail inmate mail. *See* http://www.oakgov.com/sheriff/jail/mail.html.

On July 9, 2007, plaintiff's copy of Judge Battani's July 2, 2007, order of reference (Doc. Ent. 10), mailed to the Oakland County Jail at the aforementioned Post Office Box, was returned as undeliverable. It is marked "RTS" (return to sender) and "Bond Out". Doc. Ent. 11. According to the instant defendants, plaintiff "served his sentence in the Oakland County Jail until he was bonded out sometime in June of 2007." Doc. Ent. 21 at 8. On July 12, 2007, defense counsel mailed a letter to plaintiff (in care of the Oakland County Jail), enclosing a

5

proposed "Stipulated Order Dismissing Pontiac Police Department with Prejudice and without Costs." Doc. Ent. 21-2.[6]

Six weeks have passed since the filing of defendants' July 31, 2007 motion, as has the response deadline set by my August 8, 2007, order. Plaintiff has yet to file a response to this motion. The Court's rules provide that "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available." E. D. LR 7.1(b). However, this omission alone should not be the basis for granting the instant dispositive motion. The Sixth Circuit has stated that "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [the initial] burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). "We see no reason why the situation should be different in the context of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). In essence, the court's inquiry under either 12(b)(6) or 56(c) is identical, with the most significant difference being the type of evidence the court considers in reaching its decision." *Carver*, 946 F.2d at 455. Therefore, this report will address the merits of the claims that (I) plaintiff has failed to state a claim against the City of Pontiac and Gross and (II) the Pontiac Police Department cannot be sued.

---

[6]These defendants claim that this was done in an effort to avoid formal motion practice and "such was considered part of the process of perfecting Defendants' rights under [Fed. R. Civ. P.] 11(c) which would allow Defendants to petition the Court for attorney fees if the Motion is brought." However, in light of the fact that plaintiff cannot currently be advised of procedures and processes, at this time these defendants are not requesting that the Court consider an award of attorney fees. Doc. Ent. 21 at 9-10.

This conclusion is consistent with the Sixth Circuit's direction that "district courts possess broad discretion to sanction parties for failing to comply with procedural requirements." *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks, Inc.*, 173 F.3d 988, 991 (6th Cir. 1999) (citing *Carver v. Bunch*, 946 F.2d 451, 453 (6th Cir. 1991). "[T]he *Carver* court concluded that a district court can dismiss an action for noncompliance with a local rule only if the behavior of the noncomplying party rises to the level of a failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure." *Tetro*, 173 F.3d at 992.

The Sixth Circuit considers "four factors in reviewing the decision of a district court to dismiss a case for failure to prosecute:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citing *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir.1999)). *See also Mulbah v. Detroit Board of Education*, 261 F.3d 586, 589 (6th Cir. 2001) and *Knoll*, 176 F.3d at 363.

While the Court might, in the future, consider whether this case should be dismissed under Fed. R. Civ. P. 41(b) for failure to prosecute (for example, plaintiff's failure to keep the Court apprised of his current address and failure to respond to the instant motion), and while it is clear that an inability to establish communications with the plaintiff[7] will prejudice the instant defendants in their defense of this case, it is too difficult at this time for the Court to assess the

---

[7] Doc. Ent. 21 at 2 ¶ 6.

first, third and fourth factors. Therefore, the Court should address the bases of the instant motion on the merits.

**b.** The allegations in plaintiff's complaint are not lengthy. In the "Statement of Facts," plaintiff states that "[o]n 11-11-06 while being arrested by Pontiac Police Task Force, and facing down I was kicked in the eye directly[.]" Plaintiff lists the arresting officers as Main, Marougi, Locricchio, Cosby, Janczarek, Alvis and McAllister. Plaintiff alleges he "lost [eye] sight . . . and [is] receiving treatment repeatedly[.]" Doc. Ent. 1 at 5.

> Plaintiff expands upon the facts in a one-page attachment to his complaint:
>
> On Nov[.] 11, 2006, while being arrested by the Pontiac Police Task Force, the Plaintiff <u>was</u> kick[ed] in the face by the officers after he was handcuff[ed] and in no way resisted any type of arrest. Upon the injuries, from the kick in the <u>left eye</u>, plaintiff was transfer[red] [to] the [POH] for treatment. While being treated by staff at the hospital, the plaintiff was inform[ed] that he was a[] suspect of a[] [robbery] that [had] taken place a week ago[.] [A] victim came to the hospital and <u>stated</u>, THIS IS NOT THE PERSON WHO DID IT. After that the officers stated that they ha[d] me any way on charges that occurred in the past. I was treated for the serious left eye injuries and given medications for treatment. [U]pon arrival [at the police department], I was booked and stated to the officers who booked me that I needed to file A COMPLAINT, for police brutality and a[] Sgt. Stevenson, interview[ed] me and took pictures and [a] statement and filed the report for the allegations that [occurred]. Afterward, I was transfer[red] to the Oakland County Jail to await [arraignment] for the alleged charges. Befo[r]e I was to appear in front of the 50th District court Judge, Walker, several Officers stop[ped] me and the officers of the court to appear and order[ed] them to have me transfer[red] to the court Law library for an interview for the complaint. The [lieutenant and sergeant] took statements and show[ed] me the pic[t]ures and asked me in my own words what happen[ed][.] I stated the same that is in this complaint and they st[a]ted to me that they will be getting in touch with me [regarding] the disposition of this matter. No disposition has been issue[d] to me [as] of this date.

Doc. Ent. 1 at 6. In addition to these allegations, plaintiff refers to the POH report; alleges that the police report, presumably the aforementioned Pontiac Police Department Narrative Report,

8

does not report the eye injury and resulting treatment; mentions the booking photos; and refers to Stevenson's report. Doc. Ent. 1 at 6.

**c.** The Court should agree with the instant defendants that plaintiff has failed to state a claim against the City of Pontiac and Chief Gross. Doc. Ent. 21 at 9. First, to the extent plaintiff's claim against Gross is based upon his supervisory roll as the Chief of Police of the City of Pontiac, liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). "[T]he mere right to control without any control or direction having been exercised and without any failure to supervise is not enough to support § 1983 liability." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 694 n.58 (1978), citing *Rizzo v. Goode*, 423 U.S. 362, 370-371 (1976).

> As the Sixth Circuit has stated:
>
> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.*"

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also*, *Monell*, 436 U.S. at 693-95; *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either

9

encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)).

"[T]he doctrine of respondeat superior does not apply in § 1983 lawsuits to impute liability onto supervisory personnel unless it is shown that the defendant 'encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Horton v. Martin*, 137 Fed. Appx. 773, 775 (6th Cir. 2005) (internal citation omitted) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Plaintiff's April 2, 2007, complaint does not make such an allegation against Gross.

Second, to the extent plaintiff's claim against Gross is based upon his March 16, 2007, response to plaintiff's citizen complaint, claims which are based simply on the denial of a grievance do not state a claim of constitutional dimension. *See Martin v. Harvey*, No. 00-1439, 2001 WL 669983, **2 (6th Cir. June 7, 2001) (unpublished) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts[]."); *Weaver v. Toombs*, 756 F.Supp. 335, 337 (W.D. Mich. 1989) ("The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.").

Third, to the extent plaintiff's claim against the City of Pontiac is based upon municipal liability, the "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged

10

*constitutional deprivation."* *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added). "The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must be an affirmative link between the training inadequacies alleged, and the particular constitutional violation at issue." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824-25 n.8 (1985). Therefore, while "[a] municipality may be held liable in a § 1983 claim under respondeat superior or vicarious liability if the plaintiff can establish that [his] injury was a direct result of the City's official policy or custom[,]" *Burris v. Thorpe*, 166 Fed. Appx. 799, 803 (6th Cir. 2006) (internal and external citations omitted), plaintiff's complaint does not "set forth nor allege the existence of a custom, policy or practice of treating arrestees with excessive force. Nor do the allegations of the Complaint establish that such custom, policy or practice is the driving factor giving rise to the alleged constitutional violation." Doc. Ent. 21 at 9.

**d.** While defendants claim that the above argument applies also to the Pontiac Police Department, they also argue that the Pontiac Police Department cannot be sued. Doc. Ent. 21 at 9-10. With respect to whether a city police department is subject to suit under 42 U.S.C. § 1983, "Michigan's governmental immunity statute, M.C.L. 691.1401 *et seq.*, immunizes municipal police departments from suit." *O'Donnell v. Brown*, 335 F.Supp.2d 787, 815 (W. D. Mich. 2004) (in a § 1983 lawsuit asserting federal constitutional claims, related state constitutional claims and other state law claims, "[p]laintiffs' claims against the City of Lansing Police Department are claims against the City of Lansing, and the Police Department will be dismissed as a defendant in this action."). *See also O'Leary v. Board of Fire & Water Com'rs of Marquette*, 79 Mich. 281,

286, 44 N.W. 608, 610 (1890) ("It cannot be true that such an agency can be officially liable to suits for liabilities, where it has no legal means of raising funds for payment."); *McPherson v. Fitzpatrick*, 63 Mich. App. 461, 464, 234 N.W.2d 566, 568 (1975) ("the police department is not liable in a tort action directed solely against said department and such an action, if directed against the City of Detroit, would be defeated on the basis of governmental immunity."). Therefore, the instant motion should be granted to the extent it seeks dismissal of the claims against defendant Pontiac Police Department.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall not be more than five (5) pages in length

unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
|  | s/Paul J. Komives |
|  | PAUL J. KOMIVES |
| Dated 9/14/07 | UNITED STATES MAGISTRATE JUDGE |

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on September 14, 2007.

s/Eddrey Butts
Case Manager